**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

CHARLES W. GERENA; et al.,

        Plaintiffs,

v.                                                                                    No. 15-CV-489
                                                                                      (LEK/CFH)
ANNE MARIE T. SULLIVAN; et al.,

        Defendants.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                                          **OF COUNSEL:**

Charles W. Gerena
Plaintiff Pro Se
64555
CNYPC
P.O. Box 300
Marcy, New York 13403

HON. ERIC T. SCHNEIDERMAN                                 CHRISTOPHER J. HUMMEL, ESQ.[1]
Attorney General for the                                  Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**REPORT-RECOMMENDATION AND ORDER**[2]

    Plaintiffs pro se Charles W. Gerena, Richard Pellegrino, Donald Brusso, Justin A. Rathbun, and Richard Valle (collectively, "plaintiffs") bring this civil rights action alleging

---

    [1] The undersigned bears no relation to counsel for defendants.

    [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

that defendants, Anne Marie T. Sullivan, Commissioner of the New York State Office of Mental Health ("OMH"); Donna Hall, Associate Commissioner for OMH; Naomi J. Freeman, Deputy Director for OMH; Christopher Kunkle, Director for OMH; Maureen A. Bosco, Executive Director for OMH, Central New York Psychiatric Center ("CNYPC"); Terri B. Maxymillian, Director for OMH, Treatment Services at CNYPC; Christopher Fullem, Director for OMH, Sex Offender Treatment Program ("SOTP"); Timothy J. Lamitie, Director for OMH, Facility Administrative Services at CNYPC; Jeffrey L. Nowicki, Chief of Services for OMH, SOTP at CNYPC; and Charmaine A. Bill, Treatment Team Leader for OMH, at CNYPC, violated their constitutional rights. Dkt. No. 1 ("Compl."). Presently pending is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. No. 34. Plaintiff Charles W. Gerena filed a response in opposition to defendants' motion to dismiss, requesting an opportunity to amend the complaint. Dkt No. 41. Defendants did not file a reply. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. Procedural History

Plaintiffs commenced this action on April 23, 2015. Dkt. No. 1. Each plaintiff filed a motion for leave to proceed in forma pauperis. Dkt Nos. 2-6. By Decision and Order, dated July 30, 2015, Senior United States District Judge Lawrence E. Kahn granted each plaintiff's request to proceed in forma pauperis. Dkt. No. 11. Upon initial review of

plaintiffs' complaint pursuant to 28 U.S.C. § 1915(e), Judge Kahn determined that plaintiffs failed to establish the requirements for class certification under Fed. R. Civ. P. 23, as it is well-settled that pro se litigants, as non-attorneys, may not represent anyone other than themselves. Id. at 4-5. Accordingly, plaintiffs' class allegations were dismissed without prejudice, subject to renewal in the event that an attorney appears on plaintiffs' behalf. Id. at 5. Therefore, the only claims that remain are plaintiffs' allegations that defendants' violated their rights under the federal Constitution, and the laws of New York State, in addition to plaintiffs' claims that New York State Mental Hygiene Law Article 10 is unconstitutional as applied, and that their treatment plans do not comply with state court orders directing that they receive proper treatment. Id. at 3-4.

### B. Plaintiffs' Complaint

Plaintiffs filed an eighty-seven page complaint containing a litany of grievances against CNYPC, along with a history of New York's civil confinement statutes and the emergence of New York's SOTP. See Compl. The Court has endeavored to succinctly organize the relevant claims below.

### 1. Conditions of Confinement
#### a. Restrictions on Clothing

Plaintiffs allege that, when they are transported away from the CNYPC facility, they are forced to wear black jackets with large silver letters forming the abbreviation "SOTP" emblazoned on the back. Compl. at 33 ¶ 5. They are not allowed to wear their own

clothing outside, or inside of the facility.  Id. at 33 ¶ 5; 38-39 ¶ 22; 57 ¶ 2; 61 ¶¶ 5, 9.

### b. Excessive Use of Restraints

Plaintiffs allege that they are subjected to restraints that are "extremely painful and harmful.  Compl. at 38 ¶ 22.  They allege that CNYPC is the only SOTP facility that uses the "black box" and waist chain on residents.  Id. at 57 ¶ 1.  Use of the black box causes nerve damage, swelling, and lacerations.  Id. at 57-58 ¶ 5.

### c. Restrictions on Movement

Plaintiffs are not allowed to go outside at their leisure.  Compl. at 39 ¶ 23.

### d. Restrictions on Use of Cell phones

Plaintiffs are not allowed to possess a personal cell phone at CNYPC.  Compl. at 42 ¶ 45, 64 ¶ 3.  Defendants also restrict plaintiffs' ability to watch the television, access the internet, and call toll-free phone numbers.  Id. at 52 ¶ 23; 64 ¶ 1.

### e. Restrictions on Visitation

Plaintiffs do not have "frequent and convenient opportunities" to visit with friends and family members, as visiting hours are only from 9:00 a.m. until 3:00 p.m.  Compl. at 42 ¶ 46; 62 ¶ 8.  Additionally, plaintiffs' visitors are forced to pay for "excessively over-priced" food while visiting plaintiffs, while visitors to civilly committed individuals at other SOTP facilities are allowed to bring in their own food.  Id.  Visitation must be pre-

-4-

approved, and visitors must submit to a background check. Id. at 62 ¶ 8. CNYPC also routinely denies visitors the opportunity to visit with plaintiffs, and limits plaintiffs' visitor lists. Id. Plaintiffs state that other SOTP facilities have more comfortable visiting room space. Id. ¶ 8.3.

### f. Denial of Opportunity to Work

Plaintiffs allege that defendants restrict their time spent working, limiting working hours "according to phase." Compl. at 45 ¶ 53. Plaintiffs allege that other states allow civilly committed individuals to work up to twenty-four hours in a two-week period, and very few civilly committed individuals at CNYPC work the maximum amount of hours. Id. at 45 ¶ 53; 63 ¶ 9.

Plaintiffs further allege that their vocational work assignments are limited to "menial labor." Compl. at 63 ¶ 9.1. They allege that they are not given jobs that would help their employability upon reentry to society. Id. Plumbing, electrical, HVAC, and other vocational jobs were available in Department of Corrections and Community Supervision ("DOCCS") prisons, but are not available at CNYPC. Id. ¶ 9.

### g. Dietary Issues

Plaintiffs allege that defendants failed to provide them with the Recommended Daily Dietary Allowances set forth by the National Academy of Sciences. Compl. at 63 ¶ 10. Plaintiffs also allege that the food that they are served "is extremely poor quality and includes by-product meat and old fruits and vegetable." Id. Compl. at 64 ¶ 10.

### h. Personal Property

Plaintiffs allege that defendants place unreasonable restrictions on plaintiffs' personal property. Compl. at 59 ¶ 1. They further allege that defendants place unreasonable restrictions on plaintiffs' ability to order certain publications, and possess certain electronics. Id. at 60 ¶¶ 2-3. Defendants also restrict plaintiffs ability to use the internet. Id. ¶ 4.

### 2. Inadequate Treatment

Plaintiffs allege that multiple aspects of their treatment at CNYPC are inadequate. First, they allege that the clinical administrators and treatment team leaders making treatment decisions are not qualified to make determinations as to plaintiffs' movement through their treatment phases. Compl. at 30 ¶ 12. Second, plaintiffs allege that the use of the polygraph for post-conviction sex offender testing (PCSOT) is unconstitutional. Id. at 31-32 ¶¶ 15-18. Third, plaintiffs allege that frequent clinical staff and leadership changes at CNYPC negatively impact their treatment. Id. at 34 ¶ 7. Fourth, plaintiffs allege that their treatments plans and reviews are becoming increasingly less detailed, making it difficult for plaintiffs to know what goals they must meet in order to successfully complete treatment. Id. ¶ 8. Fifth, plaintiffs are forced to repeat treatment modules when they are transferred to different facilities. Id. ¶ 9. Last, plaintiffs allege that they must draft their own treatment plans, instead of their clinicians. Id. ¶ 10. Generally, plaintiffs allege that the treatment they receive at CNYPC does not provide them with a realistic opportunity to complete treatment and be released. Id. at 43 ¶ 48.

Plaintiffs generally challenge the efficacy of their treatment at CNYPC.  They allege that they become "stuck" in certain phases of their treatment, and that the treatment they do receive from the clinical treatment team is inadequate.  Compl. at 34-35 ¶¶ 1-4.  They further allege that the clinical treatment personnel at CNYPC are unqualified, and that they do not work weekends or holidays.  Id. at 35 ¶¶ 5-7, 9.  The CNYPC treatment team is also understaffed.  Compl. at 36-37 ¶¶ 12-13.

Plaintiffs also allege that they are not provided adequate medical treatment.  Compl. at 58-59 ¶¶ 1-5.  They allege that the defendants fail to make and keep appointments.  Id. at 58 ¶ 1.  They also allege that they are not provided timely medical treatment.  Id. at 59 ¶ 3.

### 3.  Due Process Violations

Plaintiffs allege that they are denied due process of law during their civil commitment proceedings.  Compl. at 26 ¶ 4.  They argue that New York State's burden of proof used to show that plaintiffs must be civilly committed is the more lenient "clear and convincing evidence" standard as opposed to the more stringent "beyond a reasonable doubt" standard used in other states with civil commitment statutes.  Id. ¶¶ 4-5.  Plaintiffs also state that they are denied due process because the time limits of their confinement are determined by set "goals" that are not mandatory.  Id. ¶ 6.

Plaintiffs allege that defendants have subjected them to "disciplinary and punitive policies, practices, and procedures."  Compl. at 46 ¶ 1.  They further allege that CNYPC's policy of deterring future behavior through punishment is unfair and violates due process.  Id. at 46-47 ¶ 2.  Long term seclusion and restraint policies, along with the loss of

privileges, personal property, packages, telephone, vocational programs, and treatment programs, violate plaintiffs' due process rights. Id. at 47 ¶ 3.

Plaintiffs also object to the grievance and appeal process at CNYPC. Compl. at 49-50 ¶¶ 18-19.

### 4. Retaliation

Plaintiffs allege that defendants punish and retaliate against them when they file complaints. Compl. at 40 ¶ 29.

### 5. Denial of Access to the Courts and Mail Tampering

Plaintiffs allege that defendants open and read their complaints, along with incoming and outgoing mail. Compl. at 49 ¶ 15. They also allege that their written complaints never make it to their destination. Id. Plaintiffs allege that defendants deny them access to the law library. Id. at 50 ¶ 23.

### 6. Religion

Plaintiffs allege that defendants monitor their conversations with clergy and religious volunteers, and their religious services. Compl. at 66 ¶ 1. They further allege that defendants restrict the amount of religious items that plaintiffs may have as their personal property, and the number of "religious feasts" that they may celebrate. Id. ¶¶ 2-3 Defendants deny plaintiffs their right to "faith-based rehabilitation programs." Id. ¶ 4.

### 7. Searches and Seizures

Plaintiffs allege that defendants subject them to unreasonable searches and seizures. Compl. at 56 ¶ 1. They allege that defendants subjected them to unreasonable body searches, and body cavity searches, with no justification. Id. ¶ 2.

## II. Discussion[3]

### A. Legal Standard

Under Fed. R. Civ. P. 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable

---

[3] All unpublished decisions cited in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against pro se litigants, a court must afford the non-moving parties special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally." (internal citations omitted)).

## B. Personal Involvement

Defendants contend that plaintiffs have failed to identify which defendants allegedly

violated each plaintiffs' constitutional rights. Dkt. No. 34-1 at 4-7. Plaintiff Charles Gerena does not specifically oppose defendants' motion, but requests that the Court allow him to amend the complaint. Dkt. No. 41.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[4] Assertions of personal involvement that

---

[4] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . .

are merely speculative are insufficient to establish a triable issue of fact. See e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

The Court agrees with defendants. Although plaintiffs have pled a litany of complaints and grievances regarding their treatment at CNYPC, they have failed to allege "any direct or indirect allegations sufficient to permit an inference that [defendants] acted or failed to act in any of the ways that would subject them to personal liability for the violations alleged by" plaintiffs. Brown v. New York, 975 F. Supp. 2d 209, 231 (N.D.N.Y. 2013) (dismissing claims against each individual defendant where the plaintiff failed to make any direct or indirect allegations against the defendants in their individual capacity). The complaint only contains plaintiffs' general objections to policies and procedures implemented at CNYPC, without any allegation specifying which defendant participated in the implementation of such policies and procedures. Likewise, to the extent that the complaint alleges specific acts of constitutional violations, plaintiffs fail to allege the individuals involved, including failing to specify what plaintiff suffered the violation. As such, the Court finds that plaintiffs have failed to establish the requisite personal involvement of any defendant. Indeed, courts in this Circuit have dismissed similar claims against officials based upon their lack of personal involvement. See Melendez v. Schneiderman, No. 9:13-cv-622 (GLS/ATB), 2014 WL 2154536, at *8 (N.D.N.Y. May 22, 2014) (dismissing claims against the Attorney General, and Assistant Attorneys General based on lack of personal involvement in the plaintiff's civil commitment proceeding); McChesney v. Hogan, No. 9:08-CV-0163 (FJS/DEP), 2010 WL 3602660, at *5 (N.D.N.Y.

."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Aug. 17, 2010) (dismissing claims against defendants for the plaintiff's failure to show their direct involvement in the implementation of certain policies and procedures); Yeldon v. Hogan, No. 9:08-CV-769 (NAM/RFT), 2010 WL 983819, at *11 (N.D.N.Y. Mar. 15, 2010) (dismissing Fourth Amendment claims brought by plaintiffs confined at CNYPC for lack of personal involvement); Bailey v. Pataki, 636 F. Supp. 2d 288, 297 (S.D.N.Y. 2009) (dismissing claims against certain defendants for the plaintiffs failure to establish their personal involvement in alleged constitutional violations occurring at psychiatric hospital).

In response to defendants' motion, plaintiff Charles W. Gerena requests leave to amend his complaint to cure any deficiencies. Dkt. No. 41. Defendants did not file a reply.

"Generally, when a *pro se* plaintiff's complaint is dismissed for failure to state a claim, the plaintiff should be allowed to amend his complaint at least once." Roache v. Attorney General's Office, No. 9:12-CV-1034 (LEK/DEP), 2013 WL 5503151, at *15 (N.D.N.Y. Sept. 30, 2013) (citing Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999)). Here, the Court finds that the various constitutional claims raised by plaintiffs may be sufficient to state a claim for relief if the plaintiffs identified defendants personally involved in the alleged constitutional violations. As such, the Court recommends that plaintiffs be allowed to amend their complaint to cure such deficiencies. However, the Court reminds the plaintiffs that they cannot, as pro se litigants, maintain this action as a class action. See Dkt. No. 11 at 6-7.

Accordingly, it is recommended that all claims against defendants in their individual capacities be dismissed.

## C. Eleventh Amendment Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity relating to plaintiffs' claims against them in their official capacity. Dkt. No. 34-1 at 7-8.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

Moreover, suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, because plaintiff seeks monetary damages against defendants for acts

occurring within the scope of their duties, the Eleventh Amendment bar applies.

Additionally, to the extent that plaintiffs' request declaratory relief in the form of declaratory relief for past constitutional violations, such relief is not permitted. "[T]he Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" Brown, 975 F. Supp. 2d at 226 (quoting Finch v. N.Y.S. Office of Children and Family Servs., 499 F. Supp. 2d 521, 538 n.138 (S.D.N.Y. 2007) (additional citations omitted).

Accordingly, it is recommended that defendants' motion on this ground be granted. See Green v. Mansour, 474 U.S. 64, 73 (1985) (barring retrospective relief in the form of a declaratory judgment).

### D. State Court Claims[5]

To the extent that plaintiffs allege state court claims in their complaint, the undersigned recommends that the Court decline to exercise supplemental jurisdiction at this juncture. Exercising supplemental jurisdiction over state law claims is inappropriate where all federal claims have been dismissed from the action. See Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996) (noting that a court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction); Chenensky v. N.Y. Life Ins. Co., 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction where no federal claims remained);

---

[5] To the extent that defendants argue for dismissal of plaintiffs' request for enforcement of a state court order, the Court disagrees with defendants' characterization of that claim. See Dkt. No. 34-1 at 8-9. The Court interprets plaintiffs' claim as stating due process violations, as opposed to seeking enforcement of state court order. Accordingly, the Court declines to address that claim as one seeking to enforce a state court order.

Brooklyn Heights Ass'n v. Nat'l Park Serv., 818 F. Supp. 2d 564, 571 (E.D.N.Y. 2011) (declining to exercise supplemental jurisdiction where all federal claims have been disposed of).

Accordingly, it is recommended that defendants' motion on this ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 34) plaintiffs' complaint (Dkt. No. 1) pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** without prejudice; and it is further

**RECOMMENDED** that plaintiffs be granted leave to amend the complaint; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: August 26, 2016
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge